PEOPLE ex rel. KENDALL v. FEITNER et al.

(Supreme Court, Appellate Division, Second Department. May 8, 1900.)

1. TAXATION—UNEQUAL ASSESSMENTS—CERTIORARI—APPELLATE DIVISION—REVIEW.

The general tax law (Laws 1896, c. 908) authorizes the review of a tax assessment by certiorari for irregularity and overvaluation, and directs that such writs and the taking of proof of questions arising thereon shall be heard by the supreme court at special term. Held that, since the Greater New York charter provided no method for the hearing of writs of certiorari, the general tax law afforded the exclusive remedy for the review of a tax assessment for overvaluation or irregularity in the city of New York, and hence the noticing of a writ to review such assessment in the appellate division was erroneous.

**2. SAME—TIME.**

    Under Code Civ. Proc. § 2125, authorizing the writ of certiorari to review a determination of a body or officer within four calendar months thereafter, a petition for such writ to review a tax assessment levied under the Greater New York charter within four months of the final determination of its taxing officers was in time.

**3. SAME—PETITION—HEARING.**

    Greater New York Charter, § 898, requires the tax board of the city of New York to designate deputy tax commissioners in each borough to receive applications for abatement and to take testimony in relation thereto. *Held*, that an allegation in a petition for certiorari to review a tax assessment in the city of New York for overvaluation and inequality that the board refused to swear and examine applicant's witnesses did not invalidate the assessment, in the absence of proof that the board had failed to designate a deputy to hear and investigate the petition.

    Certiorari by the people, on the relation of Hattie L. Kendall, against Thomas L. Feitner and others, to review a tax assessment in the city of New York. Cause remanded to a special term.

    Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

    Edward P. Lyon, for relator.

    George S. Coleman, for respondents.

    HIRSCHBERG, J. The relator's grievance is involved in the allegation that real estate owned by her in the borough of Richmond has been assessed for the purposes of taxation, in the year 1899, at the sum of $47,000, which she asserts is an excessive valuation, and an assessment at a higher proportionate rate than that applied to other real estate on the same roll and in the vicinity. In addition to the general allegations of excessive valuation and of inequality, it is alleged in the petition that on or about April 18, 1899, she made written application to the board of taxes and assessments of the city of New York to have the assessment reduced, a copy of which application is attached to the petition; and that (to quote the words of the petition) "both before and thereafter, and within the time allowed therefor by law, your petitioner applied to said board of taxes and assessments, at their offices in the borough of Richmond and borough of Manhattan, to be heard upon said applications, presented witnesses to testify under oath as to the truth of the allegations of said applications and as to the value of said property, and asked to have said witnesses sworn and examined, and a record made of their testimony; but said board of taxes and assessments refused to swear said witnesses or to take their testimony, as your petitioner is informed and believes, but stated that the facts stated in said written applications were sufficient." The return filed by the commissioners of taxes and assessments asserts that the assessment complained of has been made at the sum for which the property would sell under ordinary circumstances, and that such property is not overvalued, or assessed at a higher proportionate rate than other real property on the same roll. The return contains no specific denial of the allegation that witnesses were presented on behalf of the relator whom the respondents refused to examine, but admits the presentation and filing of the written application for a reduc-

tion. It asserts that the respondents, after examining into the statements made by the relator in such written application, fixed the assessment at the sum named, which they decided to be the sum for which the relator was lawfully assessable.

The cause has been noticed by the relator for hearing in the appellate division under section 2138 of the Code of Civil Procedure, and the only question now to be considered is the correctness of this practice. I can find no sanction for such practice in reason, statute, or adjudication. The section referred to expressly provides that the cause which may be so noticed for hearing must be heard in the appellate division upon the writ and the return and the papers upon which the writ was granted. This would be entirely consistent and suitable where an issue of law is raised; but as these documents in the present instance raise an issue of fact not triable in an appellate tribunal this court, on an examination of the record, could only dismiss the proceedings, assuming the relator's practice to be regular, and in contemplation of the law. On the other hand, if the cause were heard at special term, pursuant to the provisions of the tax law (chapter 908, Laws 1896), the court may take proof on the questions of value and equality which are placed in issue, or send the matter to a referee, if that course is deemed desirable. The relator insists, however, that in the city of New York the provisions of the tax law are not exclusive, and that an aggrieved taxpayer may there resort, at his option, to either the writ provided by that law or to the common law or code writ. She bases this contention on the language of section 2120 of the Code of Civil Procedure (subdivision 2), to the effect that a writ of certiorari under the Code may be issued "where the writ may be issued at common law by a court of general jurisdiction, and the right to the writ, or the power of the court to issue it, is not expressly taken away by a statute." It is a sufficient answer to this contention that the common-law writ of certiorari extended only to the review of assessments void for want of jurisdiction on the part of the taxing officer, or in relation to the specific property, or to the review of assessments which were obnoxious to the charge of some other illegality as distinguished from error in judgment, whether affecting a question of fact or of law. The office of the common-law writ was not to revise and modify or set aside assessments on the ground that they were excessive or unequal. Cooley, Tax'n, p. 533; Owners of Ground, etc., v. Mayor, etc., of City of Albany, 15 Wend. 374; People v. Board of Trustees of Village of Ogdensburgh, 48 N. Y. 390; People v. Betts, 55 N. Y. 600. In the case last cited the authorities in this state on the subject are collated, and while it is intimated that they may be lacking in harmony and uniformity, the conclusion is reached that in all cases where any other available remedy exists the common-law writ will be confined to its original and appropriate office, viz. the bringing up of the record of an inferior court or tribunal to enable the court of review to determine whether the former has proceeded within its jurisdiction. By chapter 269 of the Laws of 1880, the legislature provided for the issuing of a special statutory writ, returnable at the special term of the supreme court, providing for the review and correction of

illegal, erroneous, or unequal assessments; and the provisions of that statute are substantially continued and enlarged in the existing tax law of 1896, to which allusion has been made. That the adequate remedy thus afforded to the taxpayer is to be deemed exclusive of the general provisions of the Code has been repeatedly asserted by the court of appeals. People v. Assessors of Taxes, 106 N. Y. 671, 12 N. E. 794; In re Corwin, 135 N. Y. 245, 32 N. E. 16; United States Trust Co. v. City of New York, 144 N. Y. 488, 39 N. E. 383; People v. Barker, 152 N. Y. 417, 46 N. E. 875.

In Re Corwin, supra, Judge Maynard said (page 249, 135 N. Y., and page 17, 32 N. E.):

"Section 2127 of the Code merely embodies the pre-existing practice of the courts upon the subject. But this is a statutory proceeding under an act passed after the provisions of the Code are to be deemed to have been enacted (sections 3355, 3356), and it was held by this court in People v. Assessors of Taxes, 106 N. Y. 671, 12 N. E. 794, that this act regulates the review of assessments in towns, cities, and villages by certiorari, and renders inapplicable to such cases the general provisions of the Code relating to such proceedings."

In United States Trust Co. v. City of New York, supra, Judge Gray said (page 493, 144 N. Y., and page 385, 39 N. E.):

"For the plaintiff it is argued that the proceeding by writ of certiorari was in enlargement, and not in restriction of the taxpayer's remedies, and could not be regarded as a remedy exclusive in its nature. In our opinion, the act of 1880 (chapter 269) which provided for the allowance of writs of certiorari furnished an adequate remedy for the dissatisfied taxpayer, and confined him to its adoption, in all cases where the illegality of the proceedings of the taxing officers consisted, not in a lack of jurisdiction on their part to act, but in the commission of errors which vitiated the assessment, and laid it open to cancellation or reversal."

In People v. Barker, supra, Judge Vann said (page 430, 152 N. Y., and page 878, 46 N. E.):

"Thus we have a writ of certiorari with novel functions hitherto unknown to such methods of review. The common-law writ brings up the record for inquiry into jurisdiction and regularity, and, in criminal or quasi criminal cases, the evidence also, 'to see whether, as a matter of law, there was any proof which could warrant a conviction of the relator.' People v. Board of Assessors of City of Brooklyn, 39 N. Y. 81; People v. Board of Police of Metropolitan Dist., Id. 506, 512, 518. The general statutory writ brings up both record and proceedings for examination, not only as to jurisdiction and method of procedure, but also to see whether there was a violation of any rule of law, or any competent proof of all the essential facts, or a preponderance of proof against the existence of any of those facts. Code Civ. Proc. §§ 2120–2148; People v. Martin, 142 N. Y. 352, 37 N. E. 117. The special statutory writ now before us differs from its predecessors in one remarkable respect, in that it permits a redetermination of all questions of fact upon evidence taken, in part at least, by the special term, or under its direction. People v. Smith, 24 Hun, 66, 71; People v. Gray, 45 Hun, 243, 245. As was well said by one of the learned counsel for the relator in his argument before us upon the merits, the 'provision that testimony may be taken in the judicial proceeding which the act authorizes implies that the judicial tribunal shall examine, consider, and give due effect to the same in determining the ·question of illegality, or erroneous overvaluation, or other issue of fact arising upon the petition and return; in short, that the judicial tribunal shall deal with the testimony as courts deal with evidence, and not in the manner of mere administrative tribunals like a board of tax commissioners.' What is called a review may thus become a proceeding in the nature of a new trial. The return is not conclusive, as in the common-law

and Code writs. People v. Wurster, 149 N. Y. 549, 44 N. E. 298; Harris, Certiorari, § 126. The provisions of the Code do not apply to it. People v. Assessors of Taxes, 106 N. Y. 671, 12 N. E. 794. The petition is regarded as the complaint, the return as the answer; and in deciding the issues joined thereby the court may call witnesses to its aid, and their testimony becomes a part of the proceedings upon which the determination of the court is to be made."

The learned counsel for the relator, however, insists that the cases decided by the appellate division in the First department (People v. Barker, 22 App. Div. 161, 47 N. Y. Supp. 1020, and People v. Feitner, 41 App. Div. 544, 58 N. Y. Supp. 648) are authorities in support of the practice which he has adopted. I do not so read the cases, and certainly there is nothing in them in conflict with the views herein expressed. In the Bronx Gas Company Case it was held that the provisions of the general tax law (Laws 1896, c. 908, §§ 250, 251) relative to the time when a petition to review an alleged illegal assessment must be presented to the court have no application to assessments for taxation made by the city of New York. By the sections referred to, it is required that the application for the writ must be made within 15 days after the completion and filing of the assessment roll, and of the first posting or publication of the notice thereof as required by the tax law. The consolidation act (chapter 410, Laws 1882) did not require the commissioners of taxes of the then city of New York to publish notice of the completion and filing of the tax rolls. The court held that under sections 817, 819, and 820 of that act, the assessment rolls became final, in any event, on June 1st, and that a writ of certiorari issued pursuant to section 2125 of the Code, within four calendar months after the determination to be reviewed became thus final and binding, was "in due time," as required by section 250 of the tax law of 1896. It is to be noted that in this case the appellate division remitted the proceedings to the special term for determination upon the matters arising under the writ. In the Powder Company Case, supra, the court held that the power of the supreme court to issue a common-law writ of certiorari to review an assessment which was concededly void for want of jurisdiction was not taken away by section 250 of the general tax law, or by any other statute. The only question presented was that of the power of the court to issue the writ. So, in People v. Feitner, 30 Misc. Rep. 641, 64 N. Y. Supp. 321, also cited by the relator herein, the opinion being copied in full upon the brief, the writ was issued to review an assessment void for want of jurisdiction, and the court held that in such a case either the tax-law writ or the Code writ might issue, at the option of the applicant. As the provisions of the consolidation act above referred to are substantially retained by sections 892–895, 907, and 909 of the charter of the city of New York as now created (chapter 378, Laws 1897), I am of opinion that the application for the writ in this case was timely. The application was within four months of the final determination by the taxing officers, and the Code provision should be made to apply in the absence of any legislative authority on the part of such officers to limit the time of the aggrieved taxpayer by resort to the provisions of the general tax law. To that extent the cases in the First department above cited furnish authority. And see, also, People v. Feitner,

30 Misc. Rep. 646, 64 N. Y. Supp. 269. But as to all proceedings relating to the mode and scope of the review of an assessment alleged to be erroneous on the grounds stated in the petition herein the provisions of the tax law must be regarded as controlling and exclusive.

It is further contended on behalf of the relator that the refusal of the commissioners of taxes and assessments to examine her witnesses under oath renders their action illegal in confirming and correcting the assessment as final and binding, and vitiates the entire assessment. The action of the commissioners, if correctly stated, may have been irregular and unlawful, without operating to deprive them of jurisdiction, or to render the assessment void. Compliance with their statutory duty might probably have been enforced by mandamus. But it is by no means clear that the commissioners have failed in the discharge of the duty imposed on them. Section 898 of the charter provides that the board of taxes and assessments shall designate one or more deputy tax commissioners from the whole number of such deputies to act in each of the boroughs in receiving applications for revision, and in taking testimony, to be reduced to writing, and to be transmitted, with the application and the recommendation of the deputy or deputies, to the board at its main office. It is further provided that the board shall itself hear at its main office all applications for revision made by corporations, and may prescribe the time and place of hearing in the several boroughs as to all other applications. The object of this difference is indicated in the expression that the board may make rules and regulations on the subject, "to the end that the taxpayers of each borough other than corporations may have a hearing in the borough in which they reside or in which their property assessed is situated." It will not be assumed that the respondents have not complied with the provisions of this section. If a time and place has been appointed for a hearing before the deputy or deputies designated for the borough of Richmond, the relator's application should have been made to the proper officer, and at the prescribed time. The statement in the petition that her application was made and her witnesses presented to the entire board does not raise the question of failure of duty in refusing to swear and examine them, in the absence of any suggestion that the board failed to designate a deputy to hear and investigate the complaint under and in accordance with the provisions of the charter.

The proceedings should be remitted to the special term of the court in Richmond county for the hearing and determination of the issues. All concur, except JENKS, J., taking no part.