SMALLWOOD v. COMPTROLLER OF CITY OF NEW YORK et al.

(Supreme Court, Special Term, Queens County. May 10, 1901.)

MUNICIPAL CORPORATIONS—TAXATION—INTEREST—PENALTY—EXCESSIVE TAX.
The interest penalty imposed by the Greater New York charter (Laws 1897, c. 378), which provides that taxes shall bear interest from the time the assessment rolls and warrants are delivered to the receiver, may be collected on the amount of taxes legally assessed from the date of the return of the assessment rolls and warrants, though the original assessment is excessive and reduced by certiorari after such return, since Tax Law, § 253, provides that a corrected assessment shall have the same effect as if correctly made in the first instance.

Application for mandamus by Eliza B. Smallwood against the comptroller of the city of New York and another to require the office.

to receive the principal of certain taxes in payment thereof without interest thereon.  Application denied.

Blackwell Bros. (Geo. E. Blackwell, of counsel), for relator.

John Whalen, Corp. Counsel (George S. Coleman, of counsel), for defendants.

GARRETSON, J.   The relator was the owner of real estate in the borough of Queens, in the city of New York, which was assessed for taxation for the year 1899.   On the 11th day of July in that year she instituted a proceeding by certiorari under the tax law (Laws 1896, c. 908, art. 11, § 250 et seq.) to review the assessment upon the grounds of overvaluation, inequality, and illegality; and thereafter, in July, 1900, an order was made reducing the valuations complained of, and directing that the tax extended against the original assessment should be corrected in accordance with the reduced assessment, and should be extended against the property on the basis of the corrected assessment.   On the date of the entry of the order the amount of the tax as reduced was tendered by the relator to the deputy collector of assessments and arrears in the borough of Queens, without interest, and was refused by him upon the claim and ground that the amount tendered was insufficient, for the reason that the interest penalty for delay in payment had accrued thereon.   The tax levy in the city of New York for the year 1899 was confirmed prior to the 1st day of October, 1899.   By section 916 of the charter (chapter 378, Laws 1897), taxes remaining unpaid after the 1st day of January succeeding the imposition of the tax draw interest at the rate of 7 per cent. per annum, to be calculated from the day on which the assessment rolls and warrants were delivered to the receiver of taxes. The relator now asks that a writ of mandamus issue to require the defendants to receive and accept the taxes extended against the corrected assessment without any charge for interest or penalty. She contends that the original assessment having been adjudged unlawful, and a new and corrected assessment made by order of the court, no interest had accrued upon the taxes extended against the corrected assessment, which was made coincidently with the tender of payment, and that there was no way by which she could have discharged the amount which was justly leviable upon the property prior to the entry of the order.

Whatever may have been the views heretofore entertained favoring the relator's contention, a careful examination of the question as presented hereon by the oral and written arguments of counsel leads to the conclusion that such contention cannot be sustained. That a proceeding to review an assessment for the purpose of taxation by certiorari shall not suspend the collection of taxes imposed, to the possible embarrassment and disadvantage of the government and its political subdivisions and agencies, is fairly implied from the tax law itself, wherein it is provided that:

"The allowance of the writ shall not stay the proceedings of the assessors or other persons to whom it is directed or to whom the assessment is delivered to be acted upon according to law."   Section 251.

70 N.Y.S.—46

The act of 1880 (chapter 269, § 2), which was repealed by the tax law, and for which the latter codification and revision is a substitute, contained the same provision and in language almost identical. In a proceeding brought thereunder for overvaluation, the order allowing the writ stayed the collection of 40 per cent. of the tax imposed upon the relator in consequence of the assessment, and it was said upon appeal therefrom (Daniels, J., writing):

"The stay was entirely without authority, for, as the writ was issued under the act of 1880, it was subject to all the restraints mentioned in that act. And one of the restraints is that declared by section 2 of the act,— that 'a writ of certiorari allowed under this act shall not stay the proceedings of assessors or other persons to whom it is directed or to whom the assessment roll shall be delivered to be acted upon according to law.'" People v. Coleman, 48 Hun, 602, 1 N. Y. Supp. 112.

It is also stated in the tax law (section 253) that:

"A new assessment or correction of an assessment shall have the same force and effect as if it had been so made by the proper officers within the time prescribed by law for making such assessment."

Counsel have not cited, nor has independent research disclosed, any provision of law relieving a person assessed and taxed from the payment of the interest penalty in case the amount of the tax is reduced by order of the court on certiorari. Section 256 of the tax law expressly provides that there shall be a refund of a tax paid upon an illegal, erroneous, or unequal assessment; that there shall be audited and allowed to the petitioner, and included in the tax levy next after the entry of the order, and paid to the petitioner, the amount paid by him in excess of what the tax would have been if the assessment had been made as determined by the order, together with interest thereon from the time of payment. While the language of the section would seem not to be strictly applicable to the system of government established for the city by the Greater New York charter, in that it contemplates an audit by "the board of supervisors," it clearly recognizes a municipal liability to refund, and creates an obligation so to do. A recognition of such obligation was practically made by the former municipality, the mayor, aldermen, and commonalty of the city of New York, which, as appears by the agreed statement of facts submitted hereon, had from 1880 to the date of consolidation refunded such excess of taxes, with interest, in accordance with the intent, if not with the terms, of section 8 of chapter 269 of the Laws of 1880, which section is also substantially re-enacted in section 256 of the tax law, last above cited. It was also said in the case of People v. Coleman:

"The order further provided that a stipulation should be entered into on behalf of the respondents for the return to relator of so much of the money as was directed to be paid as the condition of the stay, in case it should in the end exceed the tax which the relator was liable to pay. By section 8 of chapter 269 of the Laws of 1880 the proceeding has been provided for and defined through which the return of any excess of payment shall be obtained, and that proceeding, as the act has created and defined it, seems to be conclusive."

That payment of a tax upon an assessment afterwards adjudged to be excessive and unequal would not be deemed voluntary, and

would be recoverable under section 256 of the tax law, as well as upon general principles of law, is inferable from the opinion of the court of appeals in People v. Carter, 119 N. Y. 557, 23 N. E. 926, in which it is said:

"Where, however, one pays taxes imposed under an assessment which is not void, but simply excessive and unequal, and gives notice of his proceedings to review and correct the same, thus indicating that he intends to reserve his rights, and does not intend to waive or abandon his proceedings, we know of no principle of law upon which such a payment under protest can be set up as a bar to the further prosecution of the proceedings. By such payment he waives no rights, and does no wrong and creates no embarrassment to the municipality or officer taking his money, and he cannot be estopped thereby."

The court also referred to the provisions of section 8 of the act of 1880, and said that the direction in the judgment in the proceeding that there should be audited and allowed to the relators the amount of taxes paid upon the erroneous assessment, with interest from the date of payment, was "in strict conformity with the statute, and not subject to any just complaint."

The motion must be denied, but without costs.